300 So.2d 205 (1974)
Danny SMITH, Plaintiff-Appellant,
v.
Brenda Cooley SMITH, Defendant-Appellee.
No. 4660.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
*206 Scofield, Bergstedt & Gerard by Robert L. Hackett, Lake Charles, for plaintiff-appellant.
Mitchel M. Evans, DeRidder, for defendant-appellee.
Kay, Stewart & Nichols by Robert B. Nichols, Jr., DeRidder, for curator-appellee.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
WATSON, Judge.
Plaintiff appeals from two judgments of the trial court; the first sustaining an exception of no cause of action in his attempt to disavow a child; and the second awarding a legal separation in favor of his wife on the basis of constructive abandonment.
Danny Smith, plaintiff, was married to Brenda Cooley Smith, defendant, on December 15, 1972. A child, Laddie DeWayne Smith, was born to defendant on March 13, 1973.
On April 6, 1973, plaintiff filed a petition alleging abandonment by his wife, alleging that one child had been born of the marriage, namely Laddie DeWayne Smith, and offering to pay support for that child. The defendant answered demanding alimony and child support.
Plaintiff then filed an amended petition asserting an action en desaveu as to Laddie DeWayne Smith. However, in the amended petition, plaintiff admitted signing the register of birth as father of the child. A curator ad hoc was appointed by the court to represent the interests of the child.
Next, the defendant amended her answer to allege acts of cruelty and to allege abandonment by her husband, in that the wife was ordered, according to her amended answer, to leave the matrimonial domicile and she did.
The curator for the child filed both an exception of no right of action and an exception of no cause of action.
The exception of no cause of action was sustained by the trial court after a hearing. Following trial on the merits of the separation, the trial court found that the husband was in fact guilty of constructive abandonment and awarded the wife a legal separation.
The husband has now perfected this appeal. Two issues are presented: (1) whether the exception of no cause of action was sustained correctly; and (2) whether the evidence supports the award of a legal separation to the wife. We will consider first the exception.
As to the exception filed by the curator for the child, the trial court favored us with a well-reasoned opinion which we will quote with approval in part:
"This exception is based on the provisions of Civil Code Article 190 which reads as follows:
`The husband can not contest the legitimacy of the child born previous to the one hundred and eightieth day of marriage, in the following cases:
1. If he was acquainted with the circumstances of his wife being pregnant previously to the marriage.
2. If he was present at the registering of the birth or baptism of the child and signed the same, or if *207 not knowing how to sign, he put his ordinary mark to it, in presence of two witnesses.'
* * * * * *
".... the plaintiff rests his action of disavowal on the provisions of Act 521 of the Legislature of 1972, being R.S. 9:396, et seq. known as to the Uniform Act on Blod Tests to Determine Paternity.
* * * * * *
"Plaintiff argues, and with considerable merit, that the language of LSA-R.S. 9:396 by reason of its explicit and positive language, overrides and supercedes all previous codal provisions, statutes and jurisprudence on the subject of paternity arising out of the legitimacy resulting from marriage....
* * * * * *
"The court fails to find any clear cut intention of the legislature set forth in Act 521 of 1972 (LSA-R.S. 9:396, et seq) from which it can be interpreted or construed that said act repeals or overrides or is in conflict with the provisions of... Article 190 of the Civil Code....
* * * * * *
"Article 190 clearly states and has been interpreted to establish that the husband loses his right to disavow and to contest the legitimacy of the child born to the wife previous to the one hundred and eightieth day of the marriage when he was present at the registering of the birth or baptism of the child and particularly when he signed the same as father of the child. It is the thrust of this Article that the husband by voluntarily acknowledging the child and himself to be the father thereof gives the child legal status as a child of the marriage and operates as an estoppel against the husband from thereafter contesting the legitimacy of the child and leaves him without a cause or right of action to do so before the court.
"It is therefore the conclusion of this court that Article 190 of the Civil Code does not repeal nor override or conflict with the basic purposes and intent of the Uniform Act on Blood Tests. The basic thrust and purpose of the act is to make it clear that such blood tests and the results thereof are admissible in evidence under circumstances and conditions therein set forth and further to establish a mandatory proceeding whereby the court shall order the mother, child and alleged father to submit to the blood tests and providing the method and nature of obtaining such blood tests and the compensation to expert witnesses, etc., and also providing that the presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts show that the husband is not the father of the child. It also makes the evidence admissible where the experts disagree and the question shall be decided and submitted upon all the evidence, including the blood tests, and also establishes that where the experts conclude that the blood tests show the possibility of the alleged father's paternity, admission of this evidence is within the discretion of the court, depending upon the infrequency of blood type.
"The court cannot conclude from the provision of the blood test act that there is an intention to abolish the provisions of Article 190 regarding the loss of the right of the husband to disavow the child on conditions therein stated. Nor is it the intention of said act to abolish or override Article 191 providing that where the presumption of paternity ceases the husband, if he intends to dispute the legitimacy of the child, must do so within six (6) months from the birth of the child under certain circumstances or if he be absent within six (6) months after the discovery of the fraud if the child's birth was concealed from him nor to abolish or override Article 192 which provides that if the husband dies without *208 having made the objection to the paternity of the child within the six (6) months allowed by law, then six months shall be granted to his heirs to contest the legitimacy of the child to be counted from certain dates therein specified. Upon failure to act within these time limits in each of these cases, it is stated that the party or parties shall be forever barred from questioning the legitimacy of such child.
* * * * * *
".... it is the opinion of this court that it was the intent and basic purpose of the legislature in adopting the Uniform Act on Blood Tests to Determine Paternity to recognize that under modern scientific development and techniques, blood tests and grouping of blood tests were sufficiently reliable and should be accepted and received by the courts as evidence in cases to establish paternity of a child notwithstanding the previous reluctance of the courts of this State to give serious consideration to this type evidence....
* * * * * *
"The statute finally creates an additional exception to the presumption of paternity as a result of marriage by providing that if after the blood tests are taken by the experts, the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, then the question of paternity is resolved accordingly....
* * * * * *
"There is nothing in the foregoing Act, however, which sets forth or indicates clearly that the husband seeking to disavow the legitimacy and the parentage of the child born to his wife during marriage based upon evidence to be obtained from the blood tests of the parties is entitled to follow any procedures or have any right or cause of action or any periods of prescription other than those set forth in Articles 190 through 192 inclusive, which are the same available to all other persons contesting the legitimacy of the child under any of the other exceptions to the presumption of paternity set forth in the law.
* * * * * *
"As was stated in Williams vs. Williams, [230 La. 1, 87 So.2d 707, 1956]:
"It has always been the policy of Louisiana law to protect innocent children, born during marriage, against scandalous attacks upon their paternity by the husband of the mother, who may be seeking to avoid his obligations, or by third persons unscrupulously claiming the estate of the husband after his death.' [87 So.2d 709]
"In arriving at its conclusion here this court has been persuaded by the long established policy set forth above. The court is therefore reluctant to accept the conclusion that the legislature in adopting Act 521 of 1972 intended thereby to repeal, avoid or set aside the provisions of Article 190 of the Civil Code in the absence of any clear indication of intention to do so. This is true in the absence of any conflict with the basic intent and purpose of the Act itself and the provisions of Article 190.
"It is therefore the judgment of this court that the voluntary action of the plaintiff husband, DANNY SMITH, in signing the register of birth as the father of the child, LADDIE DEWAYNE SMITH, as well as his subsequent judicial acknowledgments of the child, prevents him from now contesting the legitimacy of the child or his status as the father thereof, and that accordingly by the provisions of Article 190 of the Civil Code, he is without a right of action or a cause of action to contest the issue, and accordingly, the exception herein filed on behalf of the child, LADDIE DEWAYNE SMITH, is maintained and the demands of the plaintiff, DANNY SMITH, herein relating to the action to *209 disclaim the child, LADDIE DEWAYNE SMITH, or the legitimacy of the child, are hereby denied, all at plaintiff's cost."
We agree with the conclusion of the trial court that the exception was well taken.
The only other issue is whether the evidence supports the conclusion of the trial court that the wife was entitled to a legal separation. Our reading of the record indicates that it does.
We note the testimony by Brenda Cooley Smith concerning a dispute provoked by Danny Smith shortly after the baby was born. According to her testimony, her mother and sister were in the kitchen of the home fixing Similac, the baby's formula, when the husband launched into a tirade concerning the method of preparing the formula. His conduct was so loud and erratic that the sister went to the bathroom and vomited. The wife attempted to remonstrate with Smith and attempted to get him to go ahead to work so the women could fix the baby's formula. He went out to his car and put his lunch in it but he came back and started "screaming" and "cussing" and ordered her to leave the home. (TR. 200)
This account of the incident on the day the wife left home is confirmed by her mother. The mother testified that Smith told his wife to get out of the house. (TR. 176)
This testimony was not contradicted by Smith or his witnesses.
The trial judge had the opportunity to see and hear the witnesses and our review of the record indicates that his conclusion that Smith was guilty of constructive abandonment by ordering his wife out of the house is supported by the evidence.
Therefore, the judgment of the trial court as to granting Brenda Cooley Smith a legal separation and also in sustaining the exception of no cause of action concerning the action en desaveu is affirmed.
Costs of the appeal are taxed against the appellant, Danny Smith.
Affirmed.